**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| PATRICK PLUMLEY, <br><br> Plaintiff, <br><br> v. <br><br> ATLAS AIR WORLDWIDE HOLDINGS, INC., CHARLES F. BOLDEN, JR., WALTER G. BORST, RAYMOND L. CONNER, JOHN W. DIETRICH, BEVERLY K. GOULET, BOBBY J. GRIFFIN, DUNCAN J. MCNABB, SHEILA A. STAMPS, CAROL J. ZIERHOFFER, and GEORGE A. WILLIS, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Patrick Plumley ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Atlas Air Worldwide Holdings, Inc. ("Atlas" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by an investor group led by funds managed by affiliates of Apollo Global Management, Inc. ("Apollo") together with investment affiliates of J.F. Lehman & Company, LLC ("JFLCO") and Hill City Capital LP

("Hill City," and together with Apollo and JFLCO, the "Buyer Consortium").[1]

2. On August 4, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Rand Parent, LLC ("Parent") and Rand Merger Sub, Inc. ("Merger Sub").[2] The Merger Agreement provides that Atlas stockholders will receive $102.50 in cash for each share of Company common stock if the Proposed Transaction is consummated.

3. The Company's corporate directors subsequently authorized the October 19, 2022, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

[2] Parent and Merger Sub are affiliates of the Buyer Consortium formed for the purpose of consummating the Proposed Transaction.

[3] The Special Meeting at which stockholders are asked to approve the Proposed Transaction currently is scheduled for November 29, 2022.

event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Atlas common stock.

10. Defendant Atlas is a Delaware corporation with its principal executive offices located at 2000 Westchester Avenue, Purchase, New York 10577. Atlas's shares trade on the Nasdaq Global Select Market under the ticker symbol "AAWW." Founded in 1992, Atlas is a holding company with a wholly owned operating subsidiary, Atlas Air, Inc. The Company also has a 51% economic interest and 75% voting interest in Polar Air Cargo Worldwide, Inc. and is the parent company of several wholly owned subsidiaries. Through its subsidiaries, Atlas provides outsourced aircraft and aviation operating services. The Company operates through

two segments: Airline Operations and Dry Leasing.  The Company offers outsourced cargo and passenger aircraft operating solutions, including contractual service arrangements, such as the provision of aircraft; and value-added services, including crew, maintenance, and insurance to aircraft and other customers.  It also provides cargo and passenger aircraft charter services to the U.S. Military Air Mobility Command, charter brokers, freight forwarders, direct shippers, airlines, manufacturers, sports teams and fans, and private charter customers, and cargo and passenger aircraft and engines dry leasing services.

11. Defendant Charles F. Bolden, Jr. is and has been a director of the Company at all times relevant hereto.

12. Defendant Walter G. Borst is and has been a director of the Company at all times relevant hereto.

13. Defendant Raymond L. Conner is and has been a director of the Company at all times relevant hereto.

14. Defendant John W. Dietrich has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

15. Defendant Beverly K. Goulet is and has been a director of the Company at all times relevant hereto.

16. Defendant Bobby J. Griffin is and has been a director of the Company at all times relevant hereto.

17. Defendant Duncan J. McNabb has been Chairman of the Board and a director of the Company at all times relevant hereto.

18. Defendant Sheila A. Stamps is and has been a director of the Company at all times relevant hereto.

19. Defendant Carol J. Zierhoffer is and has been a director of the Company at all times relevant hereto.

20. Defendant George A. Willis is and has been a director of the Company at all times relevant hereto.

21. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22. On September 6, 2022, CommerceHub and Atlas jointly announced in relevant part:

> PURCHASE, N.Y., Aug. 04, 2022 (GLOBE NEWSWIRE) -- Atlas Air Worldwide (Nasdaq: AAWW) ("Atlas" or the "Company"), a leading global provider of outsourced aircraft and aviation operating services, today announced that it has entered into a definitive agreement to be acquired by an investor group ("the Consortium") led by funds managed by affiliates of Apollo (NYSE: APO) together with investment affiliates of J.F. Lehman & Company and Hill City Capital in an all-cash transaction with an enterprise valuation of approximately $5.2 billion.
>
> Under the terms of the agreement, Atlas Air Worldwide shareholders will receive $102.50 per share in cash, representing a 57% premium to the 30-day volume-weighted average trading price per share of Atlas Air Worldwide common stock as of July 29, 20221. Upon completion of the transaction, Atlas Air Worldwide will become a privately held company and shares of Atlas Air Worldwide common stock will no longer be listed on the Nasdaq stock exchange. Atlas Air Worldwide will continue operating under the Atlas Air Worldwide name, be led by John Dietrich and the current executive team and maintain its global presence.
>
> "We believe this transaction will deliver immediate and certain value to Atlas Air Worldwide shareholders at a substantial premium, and we are pleased to reach this agreement with the Consortium," said Duncan McNabb, Chairman of the Atlas Air Worldwide Board of Directors. "The Board's decision to unanimously approve this transaction follows a careful evaluation and thoughtful review of value creation opportunities for shareholders. We believe

this transaction is the right next step to maximize value for our shareholders and the best path forward to accelerate the Company's ability to execute its strategic plan and achieve its long-term growth objectives."

"Over our 30-year history, Atlas Air Worldwide has grown to become a global leader in airfreight, delivering high-quality services to our diverse roster of customers around the world," said John Dietrich, President and Chief Executive Officer of Atlas Air Worldwide. "Following the closing of the sale to the Consortium, we will seek to leverage their resources, relationships and industry expertise to build on our strong financial and operational performance. Their investment in our company demonstrates their confidence in our people and our culture as we serve the growing needs of the global supply chain."

"Atlas Air Worldwide is a market leader that continues to set higher standards for excellence within the airfreight industry," said Apollo Partners Antoine Munfakh and Jason Scheir and J.F. Lehman & Company Partner Alex Harman on behalf of the Consortium. "With the strong market demand and long-term secular tailwinds for global air cargo services, Atlas is poised to capitalize on many opportunities for continued growth as a fund portfolio company of Apollo, J.F. Lehman and Hill City. We look forward to leveraging our resources, capital and experience in the sector to support the talented Atlas team, alongside our partners in this exciting next phase."

[1]July 29, 2022 represents the last full trading day prior to market speculation regarding a potential sale of the Company.

**Approvals and Timing**

The transaction is expected to close in the fourth quarter 2022 or first quarter 2023, subject to customary closing conditions, including approval by Atlas Air Worldwide shareholders and receipt of regulatory approvals.

**The Materially Incomplete and Misleading Proxy Statement**

23. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on October 19, 2022. The Proxy Statement, which recommends that Atlas stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts and the financial analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley &

Co. LLC ("Morgan Stanley"); and (b) potential conflicts of interest faced by Morgan Stanley and Company insiders.

### *Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and Morgan Stanley's Financial Analysis*

24. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the line items underlying the Company's forecasts for Unlevered Free Cash Flow.

25. Similarly, with respect to the each of the "Base Management Case," "Seller Case," and "Updated Management Case," the Proxy Statement fails to disclose the line items underlying the Company's forecasts for: (a) Adjusted EBITDAR; and (b) Adjusted Net Income.

26. The Proxy Statement also fails to disclose material information concerning Morgan Stanley's financial analysis.

27. With respect to the *Discounted Cash Flow Analysis* ("*DCFA*") performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the Company's 2026 EBITDAR; (b) the Company's terminal values; and (c) the Company's capitalized operating leases at December 31, 2026.

28. With respect to the *Publicly Traded Comparable Companies Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by the financial advisor.

29. With respect to the *Precedent Transactions Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by the financial advisor.

30. With respect to the *Equity Research Analysts' Future Price Targets* analysis performed by Morgan Stanley, the Proxy Statement fails to disclose the individual price targets observed by the financial advisor and the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest*

31. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by both Morgan Stanley and Company insiders, including how much of the Morgan Stanley Transaction Fee is contingent upon the closing of the Proposed Transaction.

32. The Proxy Statement also fails to disclose the details of any services that Morgan Stanley or its affiliates have provided to JFLCO or Hill City, and their respective affiliates, in the two years prior to the delivery of its fairness opinion, and any compensation Morgan Stanley or its affiliates have received for such services provided.

33. The Proxy Statement similarly fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any of the Buyer Consortium's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

34. The omission of the above-referenced information renders statements in the "Certain Financial Forecasts," "Opinion of the Company's Financial Advisor," "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

35. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Atlas**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Atlas is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote

on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Atlas within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Atlas and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 3 2022       **LONG LAW, LLC**

              By: */s/ Brian D. Long*
                 Brian D. Long (#4347)
                 3828 Kennett Pike, Suite 208
                 Wilmington, DE 19807
                 Telephone: (302) 729-9100
                 Email: BDLong@LongLawDE.com

                 *Attorneys for Plaintiff*